IN RE FIFTH THIRD BANK, NATIONAL ASSOCIATION—VILLAGE OF
PENLAND LITIGATION

No. COA11-128

(Filed 1 November 2011)

**1. Appeal and Error—preservation of issues—argument not
briefed—abandoned**

An appeal from an order compelling arbitration was aban-
doned where the arguments in the brief focused exclusively on
later orders.

**2. Arbitration . and Mediation—damages—unfair trade prac-
tices claim—not vacated**

Plaintiffs failed to show that an arbitrator's award should
have been vacated on the grounds that his decision rested on a
manifest disregard of the law. Plaintiffs cited nothing in the
record or the award to show that the amount of damages
awarded rested upon anything other than an attempt to properly
calculate the damages proximately caused by United Community
Bank's actions. Moreover, plaintiffs did not cite any decisions
holding that the trier of fact in an unfair and deceptive trade prac-
tices claim may not consider all of the evidence when determin-
ing damages or, if so, that the arbitrator here was aware that he
was not to consider such evidence.

**3. Arbitration and Mediation—vacation of award—public pol-
icy grounds**

The trial court did not err by refusing to vacate an arbitration
award on the public policy grounds that the arbitration deliberately
circumvented the purpose of the Unfair and Deceptive Trade Policy
Act where plaintiffs did not identify any portion of the record or any
language in the award that supported their assertion.

**4. Arbitration and Mediation—damages—calculation—no
modification**

Plaintiffs did not show that an arbitrator miscalculated their
damages in such a way as to entitle them to modification of his
award. Plaintiffs did not point to any language in the arbitrator's
award that explicitly stated any intention to divide the outstand-
ing balance of the loan as they contended, and the Court of
Appeals would not speculate on the mental processes employed
by the arbitrator.

**IN RE FIFTH THIRD BANK**

[216 N.C. App. 482 (2011)]

**5. Civil Procedure—summary judgment—distinct parties**

The trial court did not err by granting summary judgment in favor of United Community Bank, Inc. (UCBI) even though plaintiffs argued that UCBI was not entitled to summary judgment based on an arbitration award because it was not a party to the arbitration. All of plaintiff's claims related to a loan from United Community Bank, and the undisputed evidence showed no involvement by UCBI.

Appeal by plaintiffs from orders entered 3 November 2008 and 11 May 2010 by Judges Timothy Lee Patti and W. Robert Bell in Mecklenburg County Superior Court. Heard in the Court of Appeals 14 September 2011.

*Fuller & Barnes, LLP, by Trevor M. Fuller and Michael D. Barnes, for plaintiffs-appellants.*

*Kilpatrick Townsend & Stockton LLP, by Alan D. McInnes and Stephen E. Hudson, for defendants-appellees.*

ERVIN, Judge.

Plaintiffs Jerome E. Williams, Jr., M.D., and Jerome E. Williams, Jr., M.D., Consulting LLC, appeal from an order entered 3 November 2008 compelling them to arbitrate their claims against Defendants United Community Bank (Georgia) and United Community Bank (North Carolina)[1] and dismissing all claims asserted against UCB by Plaintiff Adelle A. Williams, M.D.[2] and from orders entered 11 May 2010 (1) granting UCB's motion to confirm the Arbitrator's award and denying Plaintiffs' motions to vacate or modify the Arbitrator's award and to continue or stay consideration of UCB's motion to confirm the Arbitrator's award and (2) granting summary judgment in favor of Defendant United Community Bank, Inc.,[3] denying Plaintiffs' motion

---

1. As the trial court noted, "the undisputed evidence shows that United Community Bank chartered in North Carolina has been merged into United Community Bank chartered in Georgia." For that reason, consistently with the approach adopted in both parties' briefs, we will refer to both entities collectively as "UCB."

2. The present appeal was noted solely by Plaintiffs Jerome E. Williams, Jr., M.D., and Jerome E. Williams Jr., M.D., Consulting LLC. Adelle A. Williams, M.D., who was a plaintiff at the trial court level, is not a party to this appeal. As a result, we will refer to Jerome E. Williams Jr., M.D., and Jerome E. Williams Jr., M.D., Consulting LLC, as "Plaintiffs" throughout the remainder of this opinion.

3. UCBI is a holding company that owns the stock of UCB.

to continue the hearing concerning UCBI's motion for summary judgment, and dismissing all of Plaintiffs' claims against UCBI with prejudice. On appeal, Plaintiffs argue that Judge Bell erred by denying their motion to vacate or modify the Arbitrator's award and by granting summary judgment in favor of UCBI. After careful consideration of Plaintiffs' challenges to the trial court's orders in light of the record and the applicable law, we conclude that the challenged orders should be affirmed.

## I. Background

### A. Substantive Facts

In 2005, Dr. Williams "was made aware of the Village of Penland development through a broker, who presented the development as an investment opportunity." At that time, Dr. Williams was told that the developers had purchased more than 1,000 acres of land in Mitchell County on which they planned to construct a mountain home community. In the event that he "decided to invest, [Dr. Williams] would receive returns on [the] investment by and through the proceeds from the sales of the finished homes in the development." More particularly, investors like Plaintiffs would purchase lots in the Village of Penland, with the purchase of these lots to be financed through credit extended by a lending institutions. The developers, in turn, agreed to be responsible for making the required loan payments for the first two years and to re-purchase the lots in question within two years "for a purchase price equal to the sum of the amount remaining on our bank loans plus an additional 125% of the value of such bank loans."

Dr. Williams decided to invest in the Village of Penland project ("the project"), and, acting in either his individual capacity or through Williams Consulting, bought twenty lots in the Village of Penland at a price of $125,000 per lot. Williams Consulting LLC, which is wholly owned by Dr. Williams, obtained a loan from UCB for the purpose of financing the purchase of eleven of these twenty lots by means of a loan procured through UCB in the principal amount of $1,031,250 and signed a promissory note in favor of UCB for that amount.[4] The UCB loan was secured by a deed of trust applicable to the relevant lots and by a personal guaranty executed by Dr. Williams.

Unfortunately for Plaintiffs, the developers did not use the monies procured through the use of this investment arrangement to

---

4. The other lots that Plaintiffs purchased in the Village of Penland were financed by loans secured from other lenders.

properly develop the Village of Penland. Ultimately, a number of individuals associated with the developers pled guilty to various federal crimes arising from activities relating to the project. After the failure of the project, Williams Consulting defaulted on the promissory note in favor of UCB, and Dr. Williams failed to honor his personal guaranty. The present litigation stems from a disagreement over the extent to which Plaintiffs are obligated to repay the loans that they secured for the purpose of investing in the project.

## B. Procedural History

On 4 April 2008, Plaintiffs filed a complaint against UCB, UCBI, and a number of other defendants in which they sought damages stemming from the failure of their investment in the project. On 25 June 2008, UCB filed a motion to compel Plaintiffs to submit their claims to binding arbitration and to stay litigation of Plaintiffs' claims pending completion of the arbitration process. In seeking to compel Plaintiffs to arbitrate their claims against UCB, UCB relied upon a provision contained in the promissory note executed by Williams Consulting that provided, in pertinent part, that "Lender and Borrower agree that all disputes, claims and controversies between them . . . shall be arbitrated" and that the "Federal Arbitration Act shall apply to the construction, interpretation, and enforcement of this arbitration provision." In addition, UCB sought the dismissal of all claims asserted by Plaintiff Adelle Williams on the grounds that she had not borrowed money from UCB. On 3 November 2008, Judge Patti entered an order compelling Plaintiffs to submit their claims against UCB to binding arbitration, staying the litigation of Plaintiffs' claims against UCB pending completion of the arbitration process, and dismissing Plaintiff Adelle Williams' claims.

On 11 August 2008, UCB commenced an arbitration proceeding against Plaintiffs. In response, Plaintiffs submitted the claims that they had asserted against UCB in their complaint in this case for the Arbitrator's consideration. After conducting a hearing, Arbitrator R. Wayne Thorpe issued an interim award on 25 October 2009 resolving all of the claims that had been asserted in the arbitration proceeding by both UCB and Plaintiffs. More specifically, the Arbitrator found in favor of UCB and against Plaintiffs with respect to all claims except for the unfair and deceptive trade practices claim that Plaintiffs had asserted against UCB. In a final award issued on 3 November 2009, the Arbitrator awarded UCB $602,837.34, a sum which consisted of the total amount that UCB was entitled to receive under the promissory note less the $602,837.34 in damages that the Arbitrator awarded

to Plaintiffs based upon their unfair and deceptive trade practices claim. As a result, the ultimate effect of the Arbitrator's decision was to require Plaintiffs to pay one half of their outstanding indebtedness under the promissory note to UCB.

On 17 December 2009, UCB filed a motion seeking confirmation of the Arbitrator's award and UCBI moved for summary judgment with respect to Plaintiff's remaining claims. On 1 February 2010, Plaintiffs moved to vacate or modify both the interim and final awards and to continue or stay consideration of UCB's motions. After providing the parties with an opportunity to be heard on 22 February 2010, Judge Bell entered two orders on 11 May 2010. In the first of these two orders, Judge Bell granted UCB's request for confirmation of the Arbitrator's award, denied Plaintiffs' motion to vacate or modify the Arbitrator's award, and denied Plaintiffs' motion to continue or stay UCB's confirmation motion. In his second order, Judge Bell granted UCBI's summary judgment motion and denied Plaintiffs' motion to continue or otherwise decline to consider UCBI's motion. Plaintiffs noted an appeal to this Court from Judge Patti's order of 3 November 2008 and Judge Bell's orders of 11 May 2010.

## II.  Legal Analysis

### A.  Scope of the Present Appeal

**[1]**  Although Plaintiffs noted an appeal from Judge Patti's 3 November 2008 order compelling them to arbitrate their claims against UCB, staying their claims against UCB pending the outcome of the arbitration proceeding, and dismissing all of the claims asserted by Plaintiff Adelle Williams, Plaintiffs have not advanced any challenge to the validity of these decisions in their brief before this Court. Instead, the arguments advanced in Plaintiffs' brief are focused exclusively upon the validity of the decisions reflected in Judge Bell's 11 May 2010 orders. As a result, we conclude that any challenge that Plaintiffs might have advanced in opposition to Judge Patti's 3 November 2008 order has been abandoned. N.C.R. App. P. 28(b)(6) (stating that "[i]ssues not presented in a party's brief, or in support of which no reason or argument is stated, will be taken as abandoned.").

### B.  Motion to Vacate Arbitrator's Decision

### 1.  Manifest Disregard of Applicable Law

**[2]**  First, Plaintiffs argue that Judge Bell erred by denying their motion to vacate the Arbitrator's decision. According to Plaintiffs, the

**IN RE FIFTH THIRD BANK**

[216 N.C. App. 482 (2011)]

Arbitrator "exceeded the scope of his authority" in that he "manifestly disregarded the law and dispensed his own brand of justice." We do not believe that Plaintiffs' challenge to Judge Bell's decision to uphold the Arbitrator's award has merit.

The arbitration clause of the promissory note that Williams Consulting executed in favor of UCB states that "[t]he Federal Arbitration Act shall apply to the construction, interpretation, and enforcement of this arbitration provision." In recognition of this fact, Plaintiffs concede that any issues that they wish to raise relating to the validity of Judge Bell's decision to enforce the Arbitrator's award are governed by the FAA. For that reason, we begin our analysis of Plaintiff's challenge to Judge Bell's order by reviewing the relevant provisions of the FAA.

"The [Federal Arbitration] Act . . . supplies mechanisms for enforcing arbitration awards: a judicial decree confirming an award, an order vacating it, or an order modifying or correcting it. [9 U.S.C.] §§ 9-11 . . . . Under the terms of [9 U.S.C.] § 9, a court 'must' confirm an arbitration award 'unless' it is vacated, modified, or corrected 'as prescribed' in [9 U.S.C.] §§ 10 and 11. [9 U.S.C.] § 10 lists grounds for vacating an award, while [9 U.S.C.] § 11 names those for modifying or correcting one." *Hall Street Associates, L. L. C. v. Mattel, Inc.*, 552 U.S. 576, 582, 128 S. Ct. 1396, 1402, 170 L. Ed. 2d 254, 262 (2008). According to 9 U.S.C. § 10(a)(4), a court may vacate an arbitration award "upon the application of any party to the arbitration . . . where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." "[T]he text [of the FAA] compels a reading of the §§ 10 and 11 categories as exclusive . . . [and] as substantiating a national policy favoring arbitration with just the limited review needed to maintain arbitration's essential virtue of resolving disputes straightaway." *Hall*, 552 U.S. at 588, 128 S. Ct. at 1404-05, 170 L. Ed. 2d at 265.

In their brief, Plaintiffs argue that, in addition to the statutory grounds for refusing to enforce an arbitration award specified in 9 U.S.C. § 10, "the award must be set aside" "when the arbitrator's decision is 'in manifest disregard of the law.' " (quoting *CACI Premier Tech. v. Faraci*, 464 F. Supp. 2d 527, 532 (E.D. Va. 2006) (quoting *Upshur Coals Corp. v. UMW, Dist.* 31, 933 F.2d 225, 229 (4th Cir. 1991)). The decisions upon which Plaintiffs rely in support of this assertion were decided before *Hall*. As the parties appear to agree, the United States Supreme Court has "not decide[d] whether 'mani-

fest disregard' survives [the] decision in *Hall Street Associates, L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 585, 128 S. Ct. 1396, 170 L. Ed. 2d 254 (2008)." *Stolt-Nielsen S. A. v. Animal Feeds Int'l Corp.*, ___ U.S. ___, ___, n.3, 130 S. Ct. 1758, 1768 n.3, 176 L. Ed. 2d 605, 616 n.3 (2010). However, given their apparent recognition that "manifest disregard of the law" may no longer be a valid basis for vacating an arbitration award, Plaintiffs also argue that, regardless of "whether 'manifest disregard' remains an independent ground for vacatur under 9 U.S.C. § 10 after [*Hall St. Assocs.*], an arbitrator's decision may still be vacated under [9 U.S.C.] § 10(a)(4)" because the arbitrator "exceeded the scope of his authority" by "manifestly disregard [ing] the law and dispens[ing] his own brand of justice." In advancing this argument, Plaintiffs place principal reliance on the United States Supreme Court's statement in *Stolt-Nielsen*, ___ U.S. at ___, 130 S. Ct. at 1767, 176 L. Ed. 2d at 616, that:

> "It is only when [an] arbitrator strays from interpretation and application of the agreement and effectively 'dispense[s] his own brand of industrial justice' that his decision may be unenforceable." In that situation, an arbitration decision may be vacated under [9 U.S.C. § 10(a)(4)] on the ground that the arbitrator "exceeded [his] powers," for the task of an arbitrator is to interpret and enforce a contract, not to make public policy.

(quoting *Major League Baseball Players Assn. v. Garvey*, 532 U.S. 504, 509, 121 S. Ct. 1724, 1728, 149 L. Ed. 2d 740, 747 (2001) (quoting *Steelworkers v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 597, 80 S. Ct. 1358, 1361, 4 L. Ed. 2d 1424, 1428 (1960)). After carefully considering Plaintiffs' arguments, we conclude, given Plaintiffs' failure to demonstrate that the Arbitrator either "manifestly disregarded the law" or "dispensed his own brand of industrial justice," that we need not determine the extent, if any, to which "manifest disregard of the law" remains a valid non-statutory basis for vacating an arbitration award.

According to well-established law, when an "action is brought under [a] Federal statute . . . in so far as it has been construed by the Supreme Court of the United States, we are bound by that construction." *Dooley v. R.R.*, 163 N.C. 454, 457-58, 79 S.E. 970, 971 (1913). However, "North Carolina appellate courts are not bound, as to matters of federal law, by decisions of federal courts other than the United States Supreme Court." *Enoch v. Inman*, 164 N.C. App. 415, 420-21, 596 S.E.2d 361, 365 (2004) (citing *Security Mills v. Trust Co.*, 281 N.C. 525, 529, 189 S.E.2d 266, 269 (1972)). Even so, despite the fact that they are " 'not binding on North Carolina's courts, the hold-

**IN RE FIFTH THIRD BANK**

[216 N.C. App. 482 (2011)]

ings and underlying rationale of decisions rendered by lower federal courts may be considered persuasive authority in interpreting a federal statute.' " *McCracken & Amick, Inc. v. Perdue*, 201 N.C. App. 480, 488, n.4, 687 S.E.2d 690, 695 n.4 (2009) (quoting *Security Mills*, 281 N.C. at 529, 189 S.E.2d at 269), *disc. review denied*, 364 N.C. 241, 698 S.E.2d 400 (2010). In light of those fundamental legal principles, we note that the United States Court of Appeals for the Fourth Circuit has stated that:

> In evaluating whether an arbitrator has manifestly disregarded the law, we have heretofore concluded that "a court's belief that an arbitrator misapplied the law will not justify vacation of an arbitral award. Rather, appellant is required to show that the arbitrators were aware of the law, understood it correctly, found it applicable to the case before them, and yet chose to ignore it in propounding their decision." [*See*] *Dawahare v. Spencer*, 210 F.3d 666, 670-71 (6th Cir. 2000) (concluding that in order to vacate for manifest disregard of law, arbitrator must have clearly stated law and expressly chosen to ignore it).

*Three S Delaware v. DataQuick Information Systems*, 492 F.3d 520, 529 (4th Cir. 2007) (quoting *Remmey v. PaineWebber, Inc.*, 32 F.3d 143, 149 (4th Cir. 1994), *cert. denied*, 513 U.S. 1112, 115 S. Ct. 903, 130 L. Ed. 2d 786 (1995)). We will apply this standard, which is essentially the same as that cited by the parties, in evaluating Plaintiffs' "manifest disregard" claim.[5]

Plaintiffs' contention that the Arbitrator "was well aware of [the] law" but "impos[ed] his own policy choice, rather than applying the law as he understood it" rests upon the fact that the Arbitrator found that Plaintiffs bore some responsibility for their losses and included the following statement in his award:

> The evidence here leads to the conclusion that UCB has engaged in unfair practices within the meaning of the North Carolina UDTPA because of its failure to follow its own policies and procedures, banking industry standards, and federal regulations and guidance in ways that contributed materially to the injury of the Respondents, as set forth in more detail above. The conduct of

5. As a result of the fact that Plaintiffs treat the "manifest disregard" standard for vacating awards as essentially identical to the standard enunciated in 9 U.S.C. § 10(a)(4) and the fact that Plaintiffs have failed to establish a "manifest disregard" of the applicable law, we need not determine the exact contours of the standard for vacating an arbitration award set out in 9 U.S.C. § 10(a)(4) and express no opinion about that subject.

the Respondents also contributed materially to the loss here—again, as explained more fully above. In weighing the relative conduct of the participants I have concluded that the amount of damage proximately caused by UCB is equal to one-half the amount of the outstanding indebtedness, after trebling.

In addition, Plaintiffs argue that the fact that the Arbitrator found their damages to be one-sixth of the outstanding loan amount, resulting in an ultimate award, after the trebling required by N.C. Gen. Stat. § 75-16, of one half of the outstanding loan amount, should lead us to conclude that the Arbitrator improperly reduced his actual damage award based on his assessment of Plaintiffs' "contributory negligence." We are not persuaded by Plaintiffs' argument.

As Plaintiffs correctly observe, "good faith is not a defense to an alleged violation of [N.C. Gen. Stat. §] 75-1.1," and "the Legislature did not intend for violations of this Chapter to go unpunished upon a showing of contributory negligence." *Winston Realty Co. v. G.H.G., Inc.*, 70 N.C. App. 374, 380-81, 320 S.E.2d 286, 290 (1984) (citing *Marshall v. Miller*, 302 N.C. 539, 548, 276 S.E.2d 397, 403 (1981)), *aff'd* 314 N.C. 90, 331 S.E.2d 677 (1985). In light of these basic legal principles, Plaintiffs argue that the Arbitrator's consideration of the extent, if any, to which Plaintiffs' losses were proximately caused by their own actions and the "relative conduct of the participants" constituted an improper application of the doctrine of contributory negligence, demonstrating that the Arbitrator manifestly disregarded applicable law. We disagree with this set of contentions for a number of reasons.

First, Plaintiffs cite nothing in the record or the Arbitrator's award tending to show that the Arbitrator's decision to award Plaintiffs an amount of compensatory damages equaling one-sixth of the outstanding loan and to then treble that amount to produce a total damage award of one-half the amount of the outstanding loan balance rested upon anything other than an attempt to properly calculate the damages proximately caused by UCB's actions. The award does not, for example, contain any statement to the effect that, having determined the amount of actual damages, the Arbitrator then reduced that amount based on Plaintiffs' alleged "contributory negligence." Instead, the award simply states the amount of damages that the Arbitrator had decided to award without any indication that this amount was calculated in blatant disregard of applicable legal principles. As a result, it is clear to us that Plaintiffs' argument rests upon nothing more than mere speculation about the thinking that under-

girded the Arbitrator's award instead of demonstrating that the Arbitrator "manifestly disregarded" applicable North Carolina law.

Secondly, Plaintiffs have not cited any decisions of the Supreme Court or this Court holding that, in a case brought under N.C. Gen. Stat. § 75-1.1, the trier of fact is precluded, in determining the appropriate amount of damages proximately caused by a defendant's unfair and deceptive practices, from considering all the evidence, including the behavior of the parties, that might reasonably bear upon the issue of proximate cause. Without attempting to describe such situations in any detail, we are able to conceive of factual scenarios under which a party's conduct might affect the extent to which a particular item of damage was or was not proximately caused by the relevant act or practice. As a result, despite the fact that "contributory negligence" is not a defense to a claim brought pursuant to N.C. Gen. Stat. § 75-1.1, the parties' behavior may still be relevant, depending on the factual circumstances underlying a particular case, to the determination of an appropriate damage award.

Thirdly, even if the Arbitrator committed an error of law by considering both parties' conduct in the course of calculating his damage award, Plaintiffs have not identified anything in the record tending to show that the Arbitrator was aware that he was not entitled to consider such evidence in determining the amount of damages that Plaintiffs were entitled to receive and deliberately ignored that legal principle. According to the authorities that describe the manner in which the "manifest disregard" standard should be applied, establishing the existence of such a deliberate disregard of the applicable law is a necessary component of the showing that must be made in order to justify vacating an arbitration award on the basis of this legal theory. No such showing has been made in this case. As a result, for all of these reasons, we conclude that Plaintiffs have failed to show that the Arbitrator's award should be vacated on the grounds that his decision rested on a "manifest disregard of the law."

### 2. Public Policy

[3] In addition, Plaintiffs contend that Judge Bell erred by failing to vacate the Arbitrator's award as "violative of North Carolina public policy." As we understand Plaintiff's argument, this contention is predicated on the assertion that the Arbitrator "deliberately circumvent[ed] the remedial and punitive purpose of the UDTPA" and "rewarded" Defendants for misconduct. This argument, in turn, rests on Plaintiffs' contention that the Arbitrator based his award on his

**IN RE FIFTH THIRD BANK**

[216 N.C. App. 482 (2011)]

personal perceptions and opinions rather than upon a damage calculation performed in accordance with the applicable law. Once again, however, Plaintiffs have failed to identify any portion of the record or any language in the Arbitrator's award that supports this assertion. In other words, Plaintiffs' argument rests on nothing more than mere speculation as to this basis for the Arbitrator's decision. As a result, we conclude that, even if Plaintiffs' "public policy" argument provides a valid basis for vacating an arbitration award, a subject about which we express no opinion, Plaintiffs have not demonstrated that they are entitled to any relief on "public policy" grounds.

### 3. Miscalculation of Damages

**[4]** Next, Plaintiffs argue that the Arbitrator's decision "must be modified due to a miscalculation in the amount of damages" pursuant to 9 U.S.C. § 11(a) (stating that an arbitration award may be modified "[w]here there was an evident material miscalculation of figures . . . in the award"). More particularly, Plaintiffs contend that, having decided that both parties bore responsibility for the situation in which they found themselves, the Arbitrator, "[i]n an effort to give effect to that finding," simply split the outstanding loan balance in half based on his assessment of the parties' conduct and awarded that amount as damages. Once again, however, Plaintiffs fail to point to any language in the Arbitrator's award that explicitly states any intention to divide the outstanding balance of the UCB loan in half and give half to each party. We will not, as we have previously stated, speculate about the mental processes that the Arbitrator employed in reaching his decision. Moreover, instead of arguing that the Arbitrator made a mathematical error of the type that is typically addressed by utilizing the authority granted by 9 U.S.C. § 11(a), *Apex Plumbing Supply v. U.S. Supply Co.*, 142 F.3d 188, 194, (4th Cir.), *cert. denied*, 525 U.S. 876, 119 S. Ct. 178, 142 L. Ed. 2d 145 (1998) (stating that, "[w]here no mathematical error appears on the face of the award," "an arbitration award will not be altered"), Plaintiffs are essentially asserting that the Arbitrator committed an error of law by allocating the loss resulting from the failure of Plaintiffs' investment in the Village of Penland in a manner that Plaintiffs contend is not permitted by N.C. Gen. Stat. § 75-1.1. However, "even a mistake of fact or misinterpretation of law by an arbitrator provides insufficient grounds for the modification of an award." *Apex Plumbing Supply*, 142 F.3d at 194 (citing *Amicizia Societa Nav. v. Chilean Nitrate & Iodine S. Corp.*, 274 F.2d 805 (2nd Cir.), *cert. denied*, 363 U.S. 843, 80 S. Ct. 1612, 4 L. Ed. 2d 1727 (1960)). As a result, we conclude that

Plaintiffs have not shown that the Arbitrator "miscalculated" their damages in such a way as to entitle them to modification of his award pursuant to 9 U.S.C. § 11(a).

## C. Summary Judgment Order

[5] Finally, Plaintiffs argue that Judge Bell erred by granting summary judgment in favor of UCBI. In their brief, Plaintiffs assert that UCBI was not entitled to summary judgment "based solely on the arbitration award" because UCBI "was not a party to the arbitration" and because "the arbitration cannot be the basis for *res judicata* in this case." We conclude that Plaintiffs' argument has no merit.

In its summary judgment motion, UCBI asserted that, "[a]s the holding company for UCB, UCBI does not engage in any lending activity, and all of Plaintiffs' claims in this case concern the loan that Dr. Williams and the Consulting Entity obtained from UCB," that "Plaintiffs have had no contact or relationship with UCBI," and that, for that reason, "all of Plaintiffs' claims in this case against UCBI must be dismissed." The motion was supported by an affidavit executed by Bradley J. Miller, Senior Vice President of UCB, in which Mr. Miller stated that:

> Defendant [UCBI] is the publicly-traded holding company for UCB. As such, it does not engage in any lending activity; it merely owns all of the stock of [UCB]. Plaintiffs Dr. Williams and his Consulting Entity did not apply to UCBI for any loan, and UCBI did not make a loan to these Plaintiffs. The bank officers and employees who considered the loan application of Plaintiffs Dr. Williams and his Consulting Entity were employed by [UCB], which actually made the loan.

As UCBI argues, all of the claims asserted in Plaintiff's complaint rest on allegations relating to the loan which Williams Consulting obtained from UCB. According to the undisputed evidence presented in connection with UCBI's summary judgment, UCBI had no involvement in the extension of credit to Plaintiffs and never interacted with Plaintiffs in any way. Thus, the evidence that UCBI submitted in support of its summary judgment motion tended to show that Plaintiffs had no basis for asserting any valid claim against UCBI, which Plaintiffs agree is a separate entity from UCB.[6]

---

6. Indeed, the ultimate thrust of Plaintiffs' challenge to Judge Bell's decision to grant summary judgment in favor of UCBI is that UCB and UCBI are distinct legal entities, such that the arbitration award resolving Plaintiffs' claims against UCB does not bar the assertion of any claims that Plaintiffs might have against UCBI.

"The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact." *Liberty Mut. Ins. Co. v. Pennington*, 356 N.C. 571, 579, 573 S.E.2d 118, 124 (2002) (citing *DeWitt v. Eveready Battery Co.*, 355 N.C. 672, 681, 565 S.E.2d 140, 146 (2002)). "[O]nce the party seeking summary judgment makes the required showing, the burden shifts to the nonmoving party to produce a forecast of evidence demonstrating specific facts, as opposed to allegations, showing that he can at least establish a *prima facie* case at trial." *Gaunt v. Pittaway*, 139 N.C. App. 778, 784-85, 534 S.E.2d 660, 664, *disc. review denied and appeal dismissed*, 353 N.C. 262, 546 S.E.2d 401 (2000). Plaintiffs did not, however, respond to UCBI's showing by "produc[ing] a forecast of evidence" tending to show that they were entitled to relief from UCBI. In addition, Plaintiffs have not included any argument in their brief on appeal disputing UCBI's showing that Plaintiffs never had any contact with UCBI and were not entitled to recover damages from UCBI for that reason. Finally, although Plaintiffs did seek to have the hearing on UCBI's summary judgment motion continued, they only requested that relief for the purpose of "develop[ing] a factual record showing that the arbitration proceeding did not involve UCBI." As a result, given Plaintiffs' failure to forecast evidence tending to show that they had a *prima facie* case of liability against UCBI, Judge Bell did not err by granting UCBI's summary judgment motion, obviating the necessity for us to determine the extent, if any, to which Plaintiffs' claims against UCBI were barred by *res judicata* considerations stemming from the Arbitrator's award.

### III. Conclusion

Thus, for the reasons set forth above, we conclude that Judge Bell did not err by denying Plaintiffs' motion to vacate or amend the Arbitrator's award or by granting summary judgment in favor of UCBI. As a result, the challenged orders should be, and hereby are, affirmed.

AFFIRMED.

Judges STEPHENS and BEASLEY concur.